UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 12 C 290 |
| JUAN MORENO-PADILLA, | ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Juan Antonio Moreno-Padilla pleaded guilty to reentering the United States without authorization and was sentenced to 80 months in the Bureau of Prisons. Moreno-Padilla initiated this action pursuant to 28 U.S.C. § 2255 by placing his petition in the prison legal mail system on January 9, 2012. He filed a memorandum in support of the motion four days later, arguing that this court and the Court of Appeals violated his due process rights by refusing to consider a "fast-track" sentence reduction argument; that the government breached the plea agreement; and that he received ineffective assistance of counsel in both the District Court and Court of Appeals.

The United States has moved to dismiss [11] Moreno-Padilla's motion as time-barred. If the court reaches the merits of his petition, the government argues, it should find that Petitioner's "fast-track" and breach of agreement claims are procedurally defaulted, and his ineffective assistance of counsel claim lacks merit. For the reasons set forth here, the petition [1] is dismissed.

## BACKGROUND

Juan Antonio Moreno-Padilla is a citizen of Mexico and is not a lawful permanent resident or citizen of the United States. *United States v. Moreno-Padilla*, 602 F.3d 802, 804 (7th Cir. 2010). Moreno-Padilla was deported to Mexico in 2004, but returned illegally to the United States in January 2008. *Id.* Upon his reentry, he pleaded guilty to an aggravated DUI offense

on March 14, 2008; while he was in custody on that charge, law enforcement alerted federal immigration authorities to his presence, and Moreno-Padilla was indicted for illegal reentry in violation of 18 U.S.C. § 1326. *Id.*

On October 1, 2008, Moreno-Padilla entered a guilty plea, a plea he asserts was based on "the written presentation of the Prosecutor." (Petitioner's Mem. in Supp. of Mot. to Vacate under § 2255 [4], hereinafter "Petitioner's Mem.," 2.) Moreno-Padilla claims that the Assistant United States Attorney wrote a letter projecting a sentencing guideline range of 46 to 57 months. (Petitioner's Mem. at 2.) No such letter appears in the record; Moreno-Padilla has instead furnished a letter from his own attorney, dated July 10, 2008, concerning the guidelines. (Letter from Federal Defender, July 10, 2008, Ex. A to Petitioner's Mem.) There is also a memorandum from AUSA Nathalina A. Hudson to the United States Probation Department; that memorandum, dated November 5, 2008 (well after Petitioner entered his plea), includes a guideline determination of 46 to 57 months. (AUSA Mem. to Probation, Nov. 5, 2008, Ex. B to Petitioner's Mem.) Moreno-Padilla pleaded guilty on October 1, 2008 without a written agreement; during the plea colloquy, the court warned that there was no agreement concerning his sentence and that the court would make a determination after considering the probation officer's report and the sentencing guidelines. (Plea Tr., Oct. 1, 2008, *United States v. Moreno-Padilla*, No. 08-CR-416 [40], hereinafter "Plea Tr.," 12:9–14.)

After the guilty plea, a probation officer prepared a Pre-Sentence Investigation Report ("PSR") using the 2008 Sentencing Guidelines in effect at the time. *Moreno-Padilla*, 602 F.3d at 804. The probation officer determined that Moreno-Padilla had 20 criminal history points and an offense level of 21, resulting in a guideline range of 77 to 96 months: Moreno-Padilla's base offense level was 8, pursuant to U.S.S.G. § 2L1.2(a). The probation officer added 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Moreno-Padilla had prior convictions that qualified as crimes of violence, and then subtracted three levels in recognition of Moreno-

Padilla's acceptance of responsibility and timely notification of his intent to enter a plea, U.S.S.G. § 3E1.1(a) & (b). *Moreno-Padilla*, 602 F.3d at 804-05.

Moreno-Padilla has three aggravated battery convictions that were at issue when calculating his criminal history score. At sentencing on December 12, 2008, defense counsel devoted considerable attention to the sentences Moreno-Padilla received for those offenses. Counsel also asked the court to consider the disparities arising from the fast-track program available in other districts but not then in place in this district. (Sentencing Tr., Dec. 12, 2008, *United States v. Moreno-Padilla*, No. 08-CR-416 [42] 20:3–13.) Ultimately, the court relied on information in the PSR and concluded that although the three battery convictions were somewhat stale, all three counted because Mr. Moreno-Padilla was not released on the last of these until June 1993, within the fifteen years prior to his arrest in this case (though barely so). *Moreno-Padilla*, 602 F.3d at 806. The district court addressed mitigating factors, including the length of time that had elapsed since the last conviction, but after reviewing Petitioner's "twenty criminal history points, his lengthy and continuous criminal history dating back to his teenage years, the seriousness of some of his past convictions, his tax delinquency, and his general lack of gainful employment," the court accepted the guideline range of 77 to 96 months, and imposed a sentence of 80 months in custody. *Id*. at 807.

Moreno-Padilla challenged the length of his sentence length on direct appeal, making three arguments: (1) that this court erred in counting criminal history points for the two 1991 aggravated battery convictions because he was released from prison more than fifteen years before the illegal reentry; (2) that three criminal history points pursuant to U.S.S.G. §§ 4A1.1(d) and (e) overstated his criminal history; and (3) that the 16-level enhancement called for by U.S.S.G. § 2L1.2(b)(1)(A) was too harsh. (Gov't Mot. to Dismiss Pet.'s Mot. for Relief Pursuant to 28 U.S.C. § 2255 [11], hereinafter "Gov't Mot.," 23, 32.) He made no mention of the fast-track concern, nor did he raise the fast-track claim during oral argument on September 18, 2009. (Oral Arg., *United States v. Juan Moreno-Padilla*, No. 08-4302, (7th Cir. Sept. 18, 2009),

*available at* http://media.ca7.uscourts.gov/oralArguments/oar.jsp.)  The Seventh Circuit rejected the arguments he did make and affirmed Moreno-Padilla's conviction and sentence on April 8, 2010.

The U.S. Supreme Court denied *certiorari* on January 10, 2011.  *Moreno-Padilla v. United States*, 131 S. Ct. 897 (2011).  Moreno-Padilla then placed his *pro se* § 2255 petition in the prison mail on January 9, 2012.

## **DISCUSSION**

Section 2255 permits a federal prisoner to attack his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  The government has moved to dismiss this petition as time-barred, procedurally defaulted, or meritless.

**I.     Timeliness**

A motion for relief pursuant to 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from "the date on which the judgment of conviction becomes final*.*" *Clay v. United States*, 537 U.S. 522, 524 (2003).  Finality attaches when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) (quoting *Clay*, 537 U.S. at 527).  In this case, the Supreme Court denied certiorari on January 10, 2011, and Moreno-Padilla deposited his § 2255 motion with the prison legal mail system on January 9, 2012.  Under the "mailbox rule," Moreno-Padilla's motion is considered filed on the date it was received by prison officials.  *Ray v. Clements,* 700 F.3d 993, 1002 (7th Cir. 2012) (citing *Houston v. Lack*, 487 U.S. 266, 275–276 (1988)).  Moreno Padilla's memorandum of law was not submitted until January 13, 2012 (and first received by this court

on January 18, 2012), but his original timely motion did identify the three grounds on which he seeks relief. The government's timeliness objection is, therefore, overruled.

## II. Fast-Track Argument

Moreno-Padilla contends the court erred by refusing to grant him a "fast-track" sentence reduction pursuant to § 5K3.1 of the U.S. Sentencing Guidelines. Under that section, defendants who plead guilty to illegal reentry are entitled to a four-point base offense level reduction under certain circumstances. This district is not one of those in which the fast-track program began, but *Spears v. United States*, 555 U.S. 261 (2009), decided while Petitioner's direct appeal was under consideration, establishes that this court, too, has discretion to vary from guidelines provisions.

The Government contends that any fast-track argument otherwise available to Moreno-Padilla is procedurally defaulted. "When an issue is not raised on direct appeal, but later attacked collaterally via a petition for post-conviction relief, the petitioner will be barred from collateral review unless he can show good cause for failing to raise the issue and actual prejudice." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). The Government refers to Moreno-Padilla's brief on direct appeal, which does not raise the fast track issue. (Def.'s Appellate Brief, Ex. A to Gov't Mot.)

A motion under § 2255 is not a substitute for a direct criminal appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Accordingly, an argument that could have been raised on direct appeal, but was not, is not a basis for § 2255 relief, absent a showing of cause– that is, "some 'external impediment' that prevented [petitioner] from raising his claims on appeal." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). The fact that an argument "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, *Bousley v. United States*, 523 U.S. 614, 622–23 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)), but in this case, Moreno-Padilla's attorney *did* raise the fast-track argument before the district court at sentencing (*see* Sentencing Tr., Dec. 12, 2008, *United*

5

*States v. Moreno-Padilla*, No. 08-CR-416 [42] 20:3–13), which defeats such a theory. The suggestion that a fast-track argument would have been futile is not sufficient to establish cause if "[f]utility . . . means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.* at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 102 (1982)). The Supreme Court has rejected the argument that existing lower court precedent excuses default. *United States v. Moss*, 252 F.3d 993, 1002 (8th Cir. 2001).

In his reply brief, Moreno-Padilla claims he raised the fast-track issue "at every opportunity in the criminal proceedings," (Petitioner's Reply [14], 3), but he did not in fact do so on direct appeal. The government's objection to Petitioner's fast-track argument is sustained.

### III. Breach of Plea Agreement

Moreno-Padilla urges that the government breached a plea agreement; the court understands this argument to rely on the memorandum from AUSA Hudson calculating his sentence guideline range at 46 to 57 months. Moreno-Padilla pleaded guilty on October 1, 2008, allegedly on the basis of this recommendation. After pleading guilty, and before sentencing, the Presentence Investigation Report determined the guideline range to be 77 to 96 months. Moreno-Padilla argues that "the Prosecutor advocated the enhanced guideline range," in direct breach of a plea agreement. (Petitioner's Mem. at 7.)

Moreno-Padilla did not make this argument on direct appeal, so the government argues that it, too, is procedurally defaulted. *See Galbraith*, 313 F.3d at 1006. The court agrees that any argument concerning a plea agreement should have been made on direct appeal and is therefore defaulted.

The more straightforward defense to this claim is that the government never entered into a plea agreement with Moreno-Padilla. He pleaded guilty to the indictment "blind"—that is, without a plea agreement and with the understanding that the court would sentence him within its discretion. (*See* Plea Tr. 12:9–14:11.) The AUSA's statements or recommendations concerning the likely guideline range do not constitute a plea agreement. *See Hartjes v.*

6

*Endicott,* 456 F.3d 786, 790 (7th Cir. 2006) ("A state's promise need not be explicit to be enforceable, but more than an unfounded and unilateral belief is required to support the defendant's assertion that the government made a particular promise.") (internal quotations omitted). To the extent that Moreno-Padilla believes his trial counsel was ineffective for failing to negotiate a plea deal, the court notes, first, that there is no evidence the government offered any such deal. *See id.* (Petitioner's argument "is premised on the assumption that there was either a breach or an unconsented modification of his plea agreement. If there was not, his ineffectiveness claim collapses."). More importantly, Moreno-Padilla can show no prejudice from the absence of a plea agreement because, as the government argues, any such agreement would have contained standard language confirming that the parties' guideline calculations are preliminary only. There is no basis for a conclusion that the government would have bargained away the court's obligation to consider the guidelines and its authority to determine his criminal history.

Moreno-Padilla cites to *United States v. Dominguez Benitez*, 542 U.S. 74 (2004), where the defendant sought a reversal of a conviction after a plain error by the district court in not giving proper Rule 11 warnings. *Id.* at 79. Specifically, the appellant in that case claimed the district judge who took his guilty plea had failed to warn him that, if the court rejected the prosecutor's sentencing recommendations, he would not be entitled to withdraw his guilty plea. *Id.* The Ninth Circuit overturned his conviction, but the Supreme Court reversed. *Id.* at 80. The Court held that to obtain relief for Rule 11 error to which there was no objection, the defendant must demonstrate with reasonable probability that, but for the error, he would not have pleaded guilty. *Id.* at 81. *Dominguez Benitz* is not helpful to Moreno-Padilla because he has not suggested that there was any such error in this case. Nor has he shown that he would not have pleaded guilty if he had not seen the more favorable guideline calculations set forth in the prosecutor's memorandum.

7

Moreno-Padilla also cites to *United States v. Romero*, 149 F. App'x 473, 475 (7th Cir. 2005), but that case does not alter the analysis here. Romero was, like Moreno-Padilla, convicted of illegal reentry and sentenced within the guidelines. *Id.* at 474. Counsel representing him on appeal saw no arguments of any merit: any deficiency in the plea colloquy did not matter because Romero was not seeking to withdraw the plea, and though Romero (like Moreno-Padilla) objected to determinations about his criminal history, there was no good-faith basis to challenge those determinations "unless the defendant says he wants to unwind the plea." *Id.* at 475.

Moreno-Padilla's claim that a plea agreement was breached does not support post-conviction relief.

## IV.     Ineffective Assistance of Counsel

Finally, Moreno-Padilla argues that he received ineffective assistance of counsel in both the District Court and Court of Appeals. First, he claims that his counsel's failure to "reduce" his sentencing agreement to writing prejudiced him; had it been in written form, he believes, the AUSA would have advocated for the lower guideline range at sentencing rather than the higher range calculated by the probation officer. Secondly, he claims that counsel was ineffective on appeal for failing to cite *Spears v. United States*, 129 S.Ct. 840 (2009) and *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2010). *Spears* holds that district courts have discretion to disagree with guidelines provisions, but this court was aware of that discretion at the time of Moreno-Padilla's sentencing, and it would have made little sense for counsel to rely on that case as a basis for reversal.

In *Reyes-Hernandez,* the Seventh Circuit held that district courts in non-fast-track districts are not precluded from reducing a defendant's sentence to avoid disparities with sentences imposed on similarly-situated illegal reentry defendants in fast-track districts. 624 F.3d at 421–22. Appellate counsel in Moreno-Padilla's case could not have cited *Reyes-Hernandez*, because that case was not decided until October 2010, well after the final decision

on Moreno-Padilla's appeal. Counsel could have raised the "fast-track" argument on appeal in this case, but the court concludes Moreno-Padilla was not prejudiced by his failure to do so. As the Seventh Circuit decision demonstrates, appellate counsel did present several challenges to the court's guideline determinations, consideration of § 3553 factors, and ultimate sentence. *Moreno-Padilla*, 602 F.3d at 807–09. The arguments counsel made, while not successful, represented reasonable strategic choices, particularly in light of the fact that this district did not have a "fast-track" program at the time of Moreno-Padilla's sentencing, and that his criminal history, including a conviction for a crime of violence, rendered him a poor candidate for "fast-track" treatment.

## CONCLUSION

The court concludes that Moreno-Padilla's § 2255 Motion was timely filed, but all three claims lack merit. The Government's motion [11] is granted and the petition [1] is dismissed. The court declines to issue a certificate of appealability.

ENTER:

Dated: August 11, 2015

_____
REBECCA R. PALLMEYER
United States District Judge